# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TROY D. ROGERS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-06-315-KEW |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Plaintiff Troy D. Rogers (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do

his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on April 7, 1959 and was 46 years old at the time of the ALJ's decision. She completed her education through the twelfth grade. Claimant has previously worked as a construction wood worker, corrections officer, certified welder, and farm laborer. Claimant alleges an inability to work beginning October 1, 2003, due to back, neck, and leg pain and severe headaches.

**Procedural History**

On February 27, 2004, Claimant filed for disability insurance benefits and Supplemental Security Income under Title II (42 U.S.C. § 401, *et seq.*) and Title XVI of the Social Security Act (42 U.S.C.

§ 1381, *et seq.*). Claimant's application for benefits was denied initially and upon reconsideration. On July 14, 2005, Claimant appeared at a hearing before ALJ Demos A. Kuchulis. By decision dated November 16, 2005, the ALJ found Claimant was not disabled at any time through the date of the decision. On June 7, 2006, the Appeals Council denied Claimant's request for review. Thus, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant's medical conditions were severe, they did not meet a Listing and Claimant retained a residual functional capacity ("RFC") to allow him to perform sedentary, unskilled work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error requiring reversal in (1) failing to engage in a proper credibility analysis; and (2) failing to properly evaluate the opinions of Claimant's treating physician.

**Credibility Analysis**

Claimant contends the ALJ improperly discounted his testimony regarding his limitations and pain resulting from his conditions. Without much explanation in the record, Claimant was determined to be "unable to work because of chronic back dysfunction" by Thomas

4

H. Osborn, Jr., D.O. on February 10, 1994. (Tr. 189). Thereafter, Claimant was involved in an automobile accident on May 19, 1994 from which much of his debilitating leg, neck, and back pain originated. (Tr. 135-136). He was treated by Dr. Osborn after the accident on May 23, 1994, complaining of lower back pain. (Tr. 159). This pain continued through appointments on May 31, 1994 and June 7, 1994. (Tr. 158-159). On June 13, 1994, Claimant underwent x-rays and an MRI scan of his cervical and lumbar spine. While Claimant's cervical spine appeared normal, his lumbar spine showed slight disk space narrowing at the L5-S1 level while the MRI revealed a slight retrolisthesis of the L5 upon the S1 vertebra resulting in a mild disk bulge and slight bulges at L3-4 and L4-5 without herniations. (Tr. 140-142).

On June 15, 1994, Dr. Osborn noted improvement in Claimant's back pain, although he continued to complain of neck pain. (Tr. 157). Claimant reported continued pain in visits with Dr. Osborn on July 7, July 21 and August 9, 1994. Dr. Osborn noted decreased range of motion, neck and back pain and headaches during these visits. (Tr. 155-156). During a visit on August 23, 1994, Dr. Osborn noted improvement in Claimant's condition. (Tr. 154).

During September and October of 1994, Claimant attended physical therapy which improved his condition. However, he missed two appointments which resulted in some regression. (Tr. 182). Claimant's physical therapist, Mike Crossett, noted Claimant had an

5

abnormal posture and demonstrated restricted mobility. Id. In a visit to Dr. Osborn in October of 1994, Claimant was not permitted to return to work due to tenderness in his neck and lower back. (Tr. 153, 180).

By December of 1994, Claimant's condition had improved such that Dr. Osborn allowed him to return to work with a 25 pound lifting restriction. (Tr. 152, 179). However, he subsequently noted tenderness in his neck and lower back. (Tr. 151). Claimant was again restricted in his work in January of 1995. (Tr. 150, 177). He was again placed on lifting restrictions in an August 9, 1995 visit with Dr. Osborn, complaining of continued cervical and lumbar tenderness. (Tr. 148).

Little appears in the record after December of 1996 with regard to Claimant's pain complaints. In a May 10, 2004 consultative examination by Ravinder R. Kurella, M.D., Claimant was found to display limited mobility in his back upon flexion, extension and lateral flexion and very minimal paraspinal muscle spasms. (Tr. 198, 200). Dr. Kurella also found Claimant had normal mobility in all other joints, negative straight leg raise testing, and normal sensation, reflexes, heel and toe walk, and general gait. (Tr. 198-199).

On January 11, 2005, Dr. Osborn completed interrogatories relating to Claimant's physical limitations. He noted he had been Claimant's treating physician since the 1994 automobile accident

6

and that he had diagnosed Claimant with degenerative arthritis of the lumbar spine and somatic dysfunction of the cervical spine. He concluded Claimant's prognosis was poor and he was unable to work a normal 40 hour week. He limited Claimant to occasional lifting up to ten pounds and indicated that he was not able to bend, carry, climb, lift, reach above shoulder level, squat, stand, walk, or engage in prolonged sitting or standing. Dr. Osborn also noted Claimant would require frequent rest periods and daily bed rest 80 percent of the time. Dr. Osborn also found Claimant suffered from decreased stamina and endurance, leg movement aggravated his back pain, and that Claimant lacked sensation in his right big toe. (Tr. 214-217).

With regard to Claimant's headaches, Claimant testified at the hearing that he had incapacitating migraine headaches occurring four times each month, which lasted three to four days at a time, and which were aggravated by light, noise, and movement. (Tr. 259-260). Claimant stated his headache medication made him sleep for at least five hours. (Tr. 260). He testified he had taken Tylox, Cataflam and a head spray for his headaches. (Tr. 258-259, 267-268).

In his decision, the ALJ found Claimant's subjective statements of pain with regard to his headaches lacked credibility. He found Claimant testified he suffered from headaches approximately four times per month which last for three to four

days at a time. However, he also found Claimant never presented to an emergency room due to a severe headache, or complained of headaches to his treating physician since 1994. The ALJ found this indicative that his headaches were not of such severity to be mentioned in the clinical notes. (Tr. 22).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. The ALJ is required to consider factors in assessing a claimant's credibility, including the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate the pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain or other symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p.

In this case, the ALJ adequately referenced the evidence in

8

the record, specifically Claimant's testimony and the medical records, in arriving at his conclusion. He adequately related the requirements upon him for his evaluation. Consequently, this Court finds no error in his credibility analysis.

**Treating Physician's Opinions**

Claimant also challenges the ALJ's evaluation of the opinions rendered by Dr. Osborn. The ALJ noted Dr. Osborn's continuing treatment of Claimant in his decision. He then rejects Dr. Osborn's findings made in his January 11, 2005 interrogatories, wherein he found a ten pound lifting restriction on Claimant. The ALJ further found "no evidence to support Dr. Osborn's rating of "None" regarding the claimant's ability to bend, carry, climb, lift reach above shoulder level, squat, stand or walk," noting Claimant was able to drive himself to the hearing and was able to hold his 5 month old granddaughter. (Tr. 21).

Obviously, the ALJ did not give Dr. Osborn's opinions controlling weight. In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight." Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003). An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." Id. (quotation

9

omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." Id.

Even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527." Id. (quotation omitted). The factors reference in that section are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion. Id. at 1300-01 (quotation omitted). After considering these factors, the ALJ must "give good reasons" for the weight he ultimately assigns the opinion. 20 C.F.R. § 404.1527(d)(2); Robinson v. Barnhart, 366 F.3d 1078, 1082 (10th Cir. 2004)(citations omitted). Any such findings must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight." Id. "Finally, if the ALJ rejects the opinion completely, he must then give specific,

legitimate reasons for doing so." <u>Watkins</u>, 350 F.3d at 1301 (quotations omitted).

The ALJ's opinion lacks the specific, legitimate reasons for the rejection of Dr. Osborn's opinions. The matter must, therefore, be remanded for further findings consistent with the prevailing case authority.

## Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the matter REMANDED** for further proceedings consistent with this Order.

DATED this 4th day of September, 2007.

*/s/ Kimberly E. West*
_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE